UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| PAULIN PRELDAKAJ | Civil Action No: |
| Plaintiff, | |
| -against- | COMPLAINT and DEMAND FOR A TRIAL BY JURY |
| AIRLU REALTY L.L.C., PARADISE COURT LLC, MARIJA RUKAJ, AND PRELA RUKAJ | |
| Defendants. | |

---

## NATURE OF THE ACTION

1. Plaintiff, Paulin Preldakaj, brings this action against his former employers, Defendants Airlu Realty L.L.C., Paradise Court LLC, Marija Rukaj, and Prela Rukaj, to recover unpaid wages and remedy unlawful retaliation. Plaintiff files suit under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et. seq., New York Labor Law ("NYLL") §§ 190 et. seq and §§ 650 et. seq, and the Minimum Wage Order for the Building Service Industry ("Building Service Industry Wage Order"), 12 N.Y.C.R.R. §141-2.2.

2. Defendants are the owners and managers of 2940 Grand Concourse, a 61-unit residential building in the Bronx, New York, 10458 (hereinafter "2940 Grand Concourse"). Defendants employed Plaintiff as a residential building superintendent from November 2020 through October 2021. As superintendent, Plaintiff regularly worked significant overtime hours for Defendants to maintain 2940 Grand Concourse. Though Defendants knew of Plaintiff's working hours, they refused to pay him any overtime, in violation of the FLSA and NYLL. Defendants further promised Plaintiff additional compensation for major repair work but refused

to honor their promises once the work was done. Defendants eventually stopped paying Plaintiff anything for his work. As weeks passed without any payment of wages, Plaintiff rightfully complained to Defendants regarding their conduct. Around a week after his complaint, Defendants retaliated against Plaintiff by terminating his employment. Throughout their dealings with Plaintiff, Defendants acted with willful and reckless disregard for their obligations under the FLSA and NYLL.

3. Plaintiff seeks unpaid overtime wages, unpaid straight time wages, liquidated damages, back pay, compensatory damages, interest, and attorneys' fees for Defendants violations of the FLSA, the NYLL, and Building Service Industry Wage Order.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b). The Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

5. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391, because a substantial part of the events giving rise to Plaintiff's claims occurred in this judicial district.

## PARTIES

5. Plaintiff Paulin Preldakaj currently resides at 178 1st Street, Yonkers, NY 10704.

6. Defendant Airlu Realty L.L.C. ("Airlu Realty") is the owner of 2940 Grand Concourse.  Airlu Realty is a domestic limited liability company registered with the New York Department of State. Airlu Realty maintains a principal place of business at 17 Arcadian Avenue, Suite 200, Paramus, NJ 07652.

7. Defendant Paradise Court LLC ("Paradise Court") is the managing agent of 2940 Grand Concourse. Paradise Court is a domestic limited liability company registered with the New York Department of State. Paradise Court maintains a principal place of business at 17 Arcadian Avenue, Suite 200, Paramus, NJ 07652.

8. Defendant Marija Rukaj, upon information and belief, is a member of both Airlu Realty and Paradise Court. She maintains a principal place of business at 17 Arcadian Avenue, Suite 200, Paramus, NJ 07652.

9. Defendant Prela Rukaj, upon information and belief, is a member of both Airlu Realty and Paradise Court. He maintains a principal place of business at 17 Arcadian Avenue, Suite 200, Paramus, NJ 07652. Mr. Rukaj acted as Plaintiff's primary supervisor throughout Plaintiff's employment by Defendants.

10. Defendants jointly employed Plaintiff within the meaning of the FLSA and NYLL.

11. In the alternative Defendants constitute a single employer of Plaintiff within the meaning of the FLSA and NYLL.

12. Defendants jointly and individually collect over $500,000 in annual revenue.

13. Defendants have employees who regularly produced for or moved in interstate commerce, including construction materials, appliances, and utility resources such as heating oil and electricity.

## FACTS

### Plaintiff's Hiring and Superintendent Duties

14. Defendants hired Plaintiff on or around November 1, 2020, to work as a building superintendent at 2940 Grand Concourse.

15. At the outset of his employment, Mr. Rukaj promised Plaintiff a weekly salary of $800. Mr Rukaj additionally promised Plaintiff a three-bedroom apartment in the basement of the building, with rent and utilities included as compensation. Defendants did not provide Plaintiff with a written employment contract or a wage notice as required by the NYLL.

16. As building superintendent, Plaintiff was responsible for the maintenance of 2940 Grand Concourse. Plaintiffs' duties included wide variety of maintenance work in the building common areas and individual apartments, including changing plumbing and light fixtures, repairing apartment doors and windows, repairing interior walls, and ensuring the buildings heating plant functioned properly. Plaintiff was further responsible for daily cleaning of the building and ensuring proper removal of garbage and recycling.

17. Plaintiff also performed major repair work for Defendants in several units at 2940 Grand Concourse, including painting, framing and plastering interior walls, and renovating plumbing and electric layouts. Plaintiff additionally renovated a bathroom in an apartment located at 2965 Valentine Avenue, a building also owned by Defendants. Defendants promised Plaintiff payment for major repair work, including $500 for each apartment kitchen or bathroom renovated, $500 for each apartment painted, and $35 for each outlet installed in a renovated apartment.

18. Though Plaintiff in fact painted and redid the kitchens of seven apartments, renovated the bathroom of another, and installed around twenty outlets across said apartments, Defendants failed to pay Plaintiff the additional promised sums.

### Plaintiff's Work Hours

19. Mr. Rukaj initially told Plaintiff that Defendants expected him to work Monday through Friday from 9:00 AM to 5:00 PM, with additional availability in off hours to handle urgent problems in the building.

20. In practice, Plaintiff worked for Defendants more than forty hours nearly every week.

21. To complete his assignments for Defendants, Plaintiff generally began his workday at 7:00 AM. Plaintiff would then work until around noon, when he usually took a thirty minute break for lunch. After lunch, Plaintiff typically worked until around 7:00 PM.

22. Plaintiff worked this schedule for Defendants Monday through Saturday, taking only Sunday off.

23. Plaintiff worked around sixty-nine hours each week for Defendants.

24. Despite Plaintiff's long hours, Defendants frequently demanded more work from Plaintiff. Ms. Rukaj often threatened Plaintiff with termination if he did not agree to work longer hours. When she did so, Plaintiff responded by explaining that he could not practically add additional hours onto the seventy or so hours he worked each week.

25. Defendants made no effort to track the number of hours Plaintiff worked.

**Defendants Retaliated Against Plaintiff After He Protested Their Failure to Pay Wages**

26. From his hiring in November 2020 until August 2021, Defendants' payment of wages to Plaintiff was regularly one or two weeks behind their payroll schedule.

27. Starting in or around August 2021, Defendants completely withheld Plaintiff's wages.

28. Defendants further failed throughout Plaintiff's employment to pay him any of the additional compensation earned through his major repair projects.

29. Though Plaintiff was upset by Defendants' conduct, he believed Defendants would eventually make good on their promises to pay. Accordingly, he continued in his duties as superintendent for several weeks without pay.

30. On or around September 25, 2021, Plaintiff spoke with Mr. Rukaj to ask for his wages. Mr. Rukaj promised Plaintiff that his wages would be forthcoming.

31. On or around October 3, 2021, Defendants terminated Plaintiff. Mr. Rukaj met with Plaintiff and stated that Defendants were unhappy with Plaintiff and no longer wished to work with him. After learning of his termination, Plaintiff again asked for his unpaid wages. Mr. Rukaj refused to offer a response, and instead left the meeting.

32. Plaintiff next spoke with Mr. Rukaj on or around October 5, 2022. Plaintiff called Mr. Rukaj to again ask for his unpaid wages. On this occasion, Mr. Rukaj grew agitated and angry, and threatened to call the police to illegally evict Plaintiff from his apartment.

33. This conversation with Defendants, as well as the timing of his termination after his first complaint, informed Plaintiff's reasonable belief that Defendants terminated him because he protested their failure to pay wages.

34.     Plaintiff's termination caused him serious emotional distress. Plaintiff prided himself on his work, and was hurt by Defendants' false assertions that his performance was less than satisfactory. Plaintiff additionally suffered from serious anxiety due to the termination. Because Plaintiff and his family lived in the apartment provided by Defendants, his termination destabilized both his finances and his housing, facing him with a risk of homelessness. As a result of Defendants' actions, Plaintiff has experienced insomnia, lack of appetite, panic attacks, irritability, and strained relationships with friends and family.

### Wages Owed to Plaintiff

35.     Plaintiff's regular rate of pay included his cash wage and the reasonable cost of his apartment at the Premises.

36.     Plaintiff estimates the reasonable cost of his apartment using the Fair Market Rent ("FMR") for 1113 Grant Avenue as determined by the Department of Housing and Urban Development ("HUD"). HUD publishes the FMR in jurisdictions across the United States on a fiscal year basis. The FMR is defined as the 40th percentile rent paid in a given area. 24 C.F.R. § 888.113.

37.     Plaintiff's employment took place over HUD fiscal year 2021. In that year, the FMR for a three-bedroom apartment in the Bronx, New York, was $2,598.

38.     Plaintiff estimates the cash value of the reasonable cost of his apartment as the monthly FMR divided by 4.3 (the average number of weeks in a month), and then by 40 (regular hours worked each week). The hourly value of the FMR during Plaintiff's employment is $15.10.

39. Defendants paid Plaintiff a cash wage of $800 per week, or approximately $20 per hour. Plaintiff's overtime rate was $45.10, one and a half times the sum of the hourly value of Plaintiff's apartment and his hourly cash wage.

40. Plaintiff worked around 69 hours each week throughout his employment.

41. Defendants accordingly owe Plaintiff $64,084.10 in unpaid overtime wages.

42. Defendants withheld Plaintiff's cash salary for around seven weeks of his employment. Defendants owe Plaintiff $5,600 in unpaid straight time wages for this work.

43. Defendants additionally failed to pay Plaintiff promised sums for painting apartments, renovating kitchens, and installing outlets. Based on the promised rate of $500 per kitchen painted, $500 per apartment painted, and $35 per outlet, Defendants owe Plaintiff an additional $8,200.

44. Altogether, Defendants owe Plaintiff $64,087.10 in unpaid overtime and $13,300 in unpaid straight time wages, not including liquidated damages, penalties, or pre-judgment interest.

## FIRST CLAIM FOR RELIEF

### Unpaid Overtime in Violation of the Fair Labor Standards Act

45. Plaintiff realleges and incorporates by reference every allegation in all preceding paragraphs.

46. Upon information and belief, at all relevant times, Defendants were and continue to be employers engaged in commerce within the meaning of the FLSA. 29 U.S.C. § 203(s)(1)(A)(ii).

47. Upon information and belief, at all relevant times, Defendants have had gross revenues in excess of $500,000 per year and retain employees who produce or handle goods moved in interstate commerce.

48. Plaintiff is a covered individual within the meaning of the FLSA. 29 U.S.C. § 207(a).

49. Until he was terminated by September 2019, Defendants employed Plaintiff within the meaning of the FLSA at all relevant times. 29 U.S.C. §203.

50. Defendant failed to pay Plaintiff one-and-one-half times his regular wage for all hours worked over forty in one week, in violation of the FLSA. 29 U.S.C. §207(a)(1).

51. Defendants' violation of the FLSA was willful and intentional. Defendants failed to make a good faith effort to comply with the FLSA with respect to Plaintiff's compensation, when they knew or should have known such an effort was due and that their failure would financially injure Plaintiff.

52. Plaintiff is entitled to recover from Defendants, jointly and severally, amounts to be determined at trial for his unpaid overtime, an equal amount as liquidated damages, reasonable attorney's fees and the costs of the action, pursuant to 29 U.S.C. §216(b).

## SECOND CLAIM FOR RELIEF

**Unpaid Overtime in Violation of the New York Labor Law**

53. Plaintiff realleges and incorporates by reference every allegation in all preceding paragraphs.

54. Defendants are employers within the meaning of the NYLL.

55. As the owners and operators of a residential building, Defendants are covered by the Building Services Wage Order. *See* 12 N.Y.C.R.R. §141-3.1

56. Defendants employed Plaintiff within the meaning of the NYLL.

57. At all relevant times to this action, Defendants failed to pay Plaintiff one-and-one-half times his regular hourly rate for all hours worked in excess of forty per work week, in violation of the NYLL and Building Services Wage Order.

58. Defendants' failure to pay wages and overtime compensation to Plaintiffs for work performed after the first 40 hours worked in a week was willful.

59. Plaintiff is entitled to recover unpaid overtime, an additional amount in liquidated damages equal to unpaid wages and overtime, costs, reasonable attorneys' fees, and pre-as well as post-judgment interest. New York Labor Law §198(1-a), 663(1).

## THIRD CLAIM FOR RELIEF

### Unpaid Wages in Violation of the New York Labor Law

60. Plaintiff realleges and incorporates by reference every allegation in all preceding paragraphs.

61. Defendants are employers within the meaning of the NYLL *See* § 190(3)

62. Defendants employed Plaintiff within the meaning of the NYLL. *See* § 190(1)

63. Defendants deducted the entirety of Plaintiff's pay for around the last seven weeks of his employment, in violation of New York Labor Law §§ 191 and 193. Defendants additionally failed to pay Plaintiff promised sums for major repair work performed at 2940 Grand Concourse.

64. Plaintiff is entitled to recover unpaid wages, an additional amount in liquidated damages equal to his unpaid wages, costs, reasonable attorneys' fees, and pre-as well as post-judgment interest. *See* NYLL §198(1-a).

## FOURTH CLAIM FOR RELIEF

### Failure to Provide Notice and Statements Required by NYLL

65. Plaintiff realleges and incorporates by reference every allegation in all preceding paragraphs.

66. Defendants willfully failed to provide Plaintiff with a written notice of his wage rate and overtime eligibility, as required by NYLL § 195(1).

67. Defendants willfully failed to provide Plaintiff with statements, with every payment of wages, that included the actual hours Plaintiff worked over forty and the overtime rate as required by NYLL § 195(3).

68. Plaintiff is entitled to $50 for each workday in which Defendants violated NYLL § 195(1), up to a maximum of $5,000. Plaintiff is similarly entitled to $250 for each workday Defendants violated NYLL § 195(3), up to a maximum of $5,000, plus costs, reasonable attorneys' fees, and any other relief that the Court in its discretion deems appropriate.

## FIFTH CLAIM FOR RELIEF

### Retaliation in Violation of the FLSA

69. Plaintiff realleges and incorporates by reference every allegation in all preceding paragraphs.

70. Plaintiff engaged in activity protected by the FLSA, including complaining about Defendants' failure to pay at least the minimum wage for several weeks of Plaintiff's work.

71. Defendants took an adverse employment action against Plaintiff by terminating him.

72. Defendants took the adverse employment action because of Plaintiff's protected activity, as demonstrated by the timing of Plaintiff's termination and Defendants' subsequent comments.

73. Plaintiff suffered injury because of his termination, including lost wages and emotional distress.

74. For Defendants' violation of 29 U.S.C. 215(a)(3), Plaintiff is entitled to reinstatement, back pay, liquidated damages, compensatory damages, and attorney's fees and costs, pursuant to 29 U.S.C. 216(b).

## SIXTH CLAIM FOR RELIEF

### Retaliation in Violation of the NYLL

5. Plaintiff realleges and incorporates by reference every allegation in all preceding paragraphs.

6. Plaintiff engaged in activity protected by the NYLL, including by complaining about Defendants' failure to pay at least the minimum wage for several weeks of Plaintiff's work.

7. Defendants took an adverse employment action against Plaintiff by terminating his employment.

8. Defendants took the adverse employment action because of Plaintiff's protected activity, as demonstrated by the timing of Plaintiff's termination and Defendants' subsequent comments.

9. Plaintiff suffered injury because of his termination, including lost wages and emotional distress.

10. For Defendants' violation of NYLL § 215(1)(a), Plaintiff is entitled to reinstatement, back pay, liquidated damages, compensatory damages, and attorney's fees and costs, pursuant to NYLL § 215(2)(a).

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff respectfully requests that this Court:

(a) Award Plaintiff damages for unpaid overtime due under the FLSA and an additional equal amount as liquidated damages because of Defendants' willful failure to pay overtime wages for hours worked beyond forty hours in a single work week, pursuant to 29 U.S.C. § 207(a);

(b) Award Plaintiff damages for unpaid overtime wages and an additional equal amount as liquidated damages, pursuant to New York Labor Law § 663(1);

(c) Award Plaintiff damages for unpaid wages and an additional equal amount as liquidated damages, pursuant to New York Labor Law § 198(a-1);

(d) Award Plaintiff $5,000 for Defendant's failure to provide wage statements in violation of NYLL § 195(3);

(e) Award Plaintiff $5,000 for Defendant's failure to provide a hiring notice in violation of NYLL § 195(1);

(f) Order Plaintiff's reinstatement pursuant to 29 U.S.C. 216(b) and NYLL § 215(2)(a);

(g) Award Plaintiff lost wages, compensatory damages, and liquidated damages pursuant to 29 U.S.C. § 216(b) and NYLL § 215(2)(a);

(h) Award Plaintiff pre- and post-judgment interest;

(i) Award Plaintiff the costs of this action together with reasonable attorney's fees pursuant to NYLL § 663, NYLL § 215(2)(a) and 29 U.S.C. § 216(b)

(j) Grant such other and further relief as this Court deems necessary and proper.

Dated: Bronx, New York
July 15, 2022

                                              Respectfully,

                                              /s/ Michael Diller
                                              BRONX LEGAL SERVICES
                                              Attorneys for Plaintiff
                                              349 E. 149th St., 10th Floor
                                              The Bronx, NY 10451
                                              (347) 592-2117
                                              mdiller@lsnyc.org